## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| ANGELA COLEMAN and TIMOTHY COLEMAN, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ETHICON, INC., d/b/a ETHICON WOMEN'S HEALTH AND UROLOGY d/b/a GYNECARE, INC., and JOHNSON & JOHNSON, | ) ) ) ) ) |
| Defendants. | ) ) |

CIVIL ACTION FILE

NO. 2:12-cv-01267

## COMPLAINT

COME NOW Angela Coleman and Timothy Coleman as Plaintiffs herein and hereby file this Complaint, showing the Court as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiffs Angela Coleman and Timothy Coleman are citizens of Richland County, South Carolina.

2.     Defendant Ethicon, Inc. d/b/a Ethicon Women's Health and Urology d/b/a Gynecare, Inc. ("Ethicon") is a New Jersey corporation with its corporate headquarters in New Jersey.  All acts and omissions of Ethicon as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.  Ethicon is not currently registered with the West Virginia Secretary of State, but may be served through its officer Daniel G. Wildman at Route 22 West, Somerville, NJ 08876.

3.      Defendant Johnson & Johnson ("J&J") is a New Jersey corporation with its corporate headquarters in New Jersey.  All acts and omissions of J&J as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.  J&J is not currently registered with the West Virginia Secretary of State, but may be served through its chief executive officer, William Weldon, at One Johnson & Johnson Plaza, New Brunswick, NJ 08933.  J&J is the parent company of Ethicon.

4.      Ethicon and J&J are hereinafter collectively referred to as "Defendants."

5.      This is a lawsuit for personal injury damages in excess of $75,000.00.  The parties are citizens of different states.  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

6.      Defendants are subject to *in personam* jurisdiction in the U.S. District Court for the Southern District of West Virginia because they placed a defective product in the stream of commerce and that product caused personal injuries to Plaintiff Angela Coleman at her residence in Richland County in the State of South Carolina, and cases involving these claims have now been consolidated in this District pursuant to 28 U.S.C. § 1407.

## FACTUAL ALLEGATIONS

1.      Defendants design, manufacture, package, label, market, sell, and distribute medical devices, including a medical device known as the TVT™ System (hereinafter "Product"), a medical device implanted to treat certain women like Plaintiff for stress urinary incontinence.

2.      Plaintiff was implanted with a Product designed, manufactured, marketed, packaged, labeled, sold, and placed in the stream of commerce by Defendants.  Due to defective design,

defective manufacturing, defective marketing, and negligence by Defendants, the Product has caused Plaintiff severe and permanent bodily injuries and significant mental and physical pain and suffering, and economic losses, including bleeding, recurrent infections, dyspareunia (painful sexual intercourse), pelvic pain, inflammation, urinary tract infections, continued incontinence, lower back pain, constipation, vaginal itching, and bloating.

3.      Plaintiff underwent a surgery in which she was implanted with the Product on April 23, 2009, by Dr. James Johnson at Palmetto Health Baptist Hospital in Columbia, South Carolina. The particular product implanted in her bore a reference number of 810081L and a lot number of 3227767.

4.      Plaintiff Angela Coleman continues to suffer from back pain, chronic infections, vaginal itching, bleeding, continued incontinence, urinary tract infections, bloating, and dyspareunia.

5.      The Product and the surgical mesh used to manufacture the Product have numerous defects that create a high risk of unreasonable and dangerous injuries and side effects with severe permanent adverse health consequences.  These defects include, but are not limited to:

   a.  The material is not inert and therefore reacts to human tissues and/or other naturally occurring human bodily contents adversely affecting patient health.

   b.  The mesh material harbors infections that adversely affect human tissues and patient health.

   c.  The Product and the mesh migrate from the location of their implantation, adversely affecting tissues and patient health.

   d.  The mesh material abrades tissues, adversely affecting patient health.

e. The Product and the mesh regularly fail to perform the purpose of their implantation such that the patient requires removal of the device and repeated treatment and surgery.

f. Due to their various defects, the Product and the mesh regularly cause significant injury to patients such that the Product must be removed, resulting in additional surgery.

g. The Product and the mesh become embedded in human tissue over time such that if it needs to be removed due to its various defects, the removal causes damage to organs and tissues, adversely affecting patient health.

h. The Product is defective in shape, composition, weight, physical, chemical and mechanical properties and is inappropriately engineered for use in the female pelvis.

6. Because of its numerous defects, the Product creates an unreasonable risk of injury and other adverse health consequences for patients, including, but not necessarily limited to, vaginal erosion, infection, extrusion, perforation, chronic pain and/or abscess.

7. Prior to the time that the Product was implanted into Plaintiff, Defendants were aware of numerous defects in the Product and the mesh, including, but not limited to, the defects and unreasonable risks identified above. Despite being aware of the numerous defects and unreasonable risks in its product, Defendants manufactured, marketed, and distributed the Product with the intent that it would be implanted in patients. Defendants were aware that implanting the Product in patients was likely to cause injury and harm to the patients into whom

the Product was implanted. Alternatively, Defendants failed to exercise reasonable care in determining the risks and potential adverse consequences of implanting the Product into patients.

8. Defendants made public statements in the form of written product descriptions, product labels, promotional materials and other materials that asserted that implanting the Product in patients was safe and would not cause harm to patients. These statements were made with the intent that medical professionals and members of the public would rely upon them, with the intent that members of the public would pay for the Product and that the Product would be implanted in patients. When Defendants made these statements, Defendants knew that the statements were inaccurate. Alternatively, when Defendants made these statements Defendants should have known the statements were inaccurate.

9. Representatives of Defendants also made statements to numerous individuals, including medical professionals, that implanting the Product in patients was safe and would not cause harm to patients. When Defendants' representatives made these statements, Defendants knew that the statements were inaccurate. Alternatively, when Defendants' representatives made these statements, Defendants should have known the statements were inaccurate.

10. Defendants knowingly and deliberately made material misrepresentations to the federal Food and Drug Administration concerning the design, manufacture, safety, and efficacy of the Product.

11. Before Plaintiff suffered the injuries complained of herein, Defendants were on notice of numerous bodily injuries caused by the Product, and based thereon, Defendants knew or should have known that the Product caused an unreasonably high rate of vaginal erosion, infection, extrusion, perforation, chronic pain and/or abscess in women implanted with the Product.

12. Even though Defendants have known or should have known that the Product created a foreseeable, unreasonable risk of harm to those women into whom it was implanted, Defendants continued to market the Product in the United States. Defendants have sold thousands of the Products in the United States alone.

13. Defendants have never provided adequate warning or information of the risks that the Product causes an unreasonably high rate of vaginal erosion, infection, extrusion, perforation, chronic pain and/or abscess to physicians who implanted the Product, or to women implanted with the device.

### COUNT I - STRICT LIABILITY - DEFECTIVE MANUFACTURE

14. One or more of the defects in the Product are the result of improper or incorrect manufacturing processes that result in the Product as manufactured deviating from its intended design. The defects caused by manufacturing defect rendered the Product unreasonably dangerous to consumers and to Plaintiff. The defects in the Product implanted in Plaintiff existed from its manufacture; therefore, the defects were present when it left the possession and control of Defendants. As a direct and proximate result of the defective manufacture of the Product, Plaintiff has suffered serious bodily injury, mental and physical pain and suffering, and has incurred economic loss.

### COUNT II - STRICT LIABILITY - DEFECTIVE DESIGN

15. The Product is unreasonably dangerous and dangerously defective as designed because as designed it has numerous defects that adversely affect patient health. The defects in the Product existed from its inception; therefore, the defects were present when it left the possession and control of Defendants. The foreseeable risks of harm posed by the design of the Product could

have been reduced and/or avoided by the adoption of a reasonable alternative design by Defendants, and Defendants' failure to adopt a safer alternative design rendered the Product unreasonably unsafe. As a direct and proximate result of the defective design of the Product, Plaintiff has suffered serious bodily injury, mental and physical pain and suffering, and has incurred economic loss.

### COUNT III - STRICT LIABILITY – MARKETING DEFECT

16. The Product was defective by reason of Defendants' failure to provide adequate warnings or instructions.

17. Defendants failed to provide such warning or instruction that a manufacturer exercising reasonable care would have provided to physicians who implanted the Product or to those women who had been implanted with the Product, concerning the following risks, of which Defendants had actual or constructive knowledge at the time the Product left Defendants' control:

      a. the high failure rate of the Product;

      b. the high rate of infections and abscesses caused by the Product;

      c. the high rate of vaginal erosions and extrusions caused by the Product;

      d. the high rate of chronic pain caused by the Product

      e. the necessity to remove the Product from the patient's body in the event of product failure, infections, abscesses, erosion, or extrusion.

18. After receiving notice of numerous bodily injuries resulting from the Product, Defendants failed to provide such post-marketing or post-sale warnings or instructions that a manufacturer exercising reasonable care should have provided to physicians who implanted the Product or

those women who had been implanted with the Product that the Product was causing an unreasonably high rate of infections, abscesses, erosions and/or extrusions. Furthermore, Defendants failed to provide post-marketing or post-sale warnings or instructions concerning the necessity to remove the Product from the patient's body in the event of product failure, infections, abscesses, erosion, or extrusion.

19.    As a direct and proximate result of Defendants' inadequate warnings and instructions, both at the time of marketing and after the sale of the Product, Plaintiff has suffered serious bodily injury, mental and physical pain and suffering, and has incurred economic loss.

## COUNT IV – NEGLIGENCE

20.    Defendants failed to exercise ordinary and reasonable care in designing, manufacturing, testing, marketing, labeling, packaging, selling and/or distributing the Product, and Defendants negligently failed to provide adequate warnings and instructions to Plaintiff or to her physician regarding the Product.

21.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered serious bodily injury, mental and physical pain and suffering, and has incurred economic loss.

## COUNT V – BREACH OF WARRANTY

22.    The Product implanted in Plaintiff failed to function as intended and as represented by Defendants because it did not relieve the symptoms or otherwise alleviate the medical problems that it was intended to cure. Instead, the Product caused Plaintiff to suffer infection or inflammation, tissue abrasion, and other severe adverse health consequences. Accordingly, the Product was not fit for the ordinary purpose for which such goods are used and failed to conform to Defendants' affirmations or representations. Furthermore, Defendants knew that the Product

was to be used for the particular purpose for which it was used on Plaintiff and knew that Defendants' expertise was relied upon to furnish suitable goods. Because the Product failed to conform to representations and was not suitable for the purpose for which it was used, Defendants have breached express warranties, the implied warranty of merchantability, and the warranty of fitness for a particular purpose. As a result of Defendants' breach of warranty, Plaintiff has suffered serious bodily injury, mental and physical pain and suffering, and has incurred economic loss.

## COUNT VI – LOSS OF CONSORTIUM

23.    Plaintiffs hereby incorporate and re-aver all of the allegations contained in the foregoing paragraphs of this Complaint in their entirety as if fully rewritten herein.

24.    Plaintiff Timothy Coleman is the spouse of Plaintiff Angela Coleman, and as a direct and proximate result of Defendants' conduct as described in this Complaint, Plaintiff Timothy Coleman has necessarily paid and has become liable to pay for medical aid, treatment, attendance and medications, and will necessarily incur further expenses of a similar nature in the future.

25.    As a direct and proximate result of Defendants' conduct as described in this Complaint, Plaintiff Timothy Coleman suffered and in the future will suffer the loss of his wife's affection, companionship, services, society and other damages.

26.    As a direct and proximate result of Defendants' conduct as described in this Complaint, Plaintiff Timothy Coleman is entitled to and hereby seeks all such compensatory damages, punitive damages, attorney fees, reimbursement for all past, present and future health and

medical care costs related to the Products, and any and all other damages allowed by law, in an amount to be determined at trial.

## PUNITIVE DAMAGES

27.    At the time Defendants designed, manufactured, marketed, labeled, packaged, and sold the dangerous and defective Product and failed to adequately warn Plaintiff of the dangerous and defective nature of the Product and thereby caused Plaintiff's injuries, Defendants knew, or in the exercise of the appropriate degree of care should have known, that its conduct created a high degree of probability of injury to others and thereby showed complete and reckless indifference to, and conscious disregard for the safety of others, including Plaintiff, and such conduct warrants the imposition of punitive damages under all applicable legal standards.

WHEREFORE, Plaintiffs demand trial by jury, judgment against Defendants for compensatory and punitive damages as well as costs, attorney fees, interest, or any other relief, monetary or equitable, to which they are entitled.

PLAINTIFFS DEMAND A TRIAL BY JURY.

Date: April 23, 2012                    Respectfully submitted,

**MUELLER LAW OFFICES**
Attorneys for Plaintiffs

s/Mark R. Mueller
Mark R. Mueller
Texas Bar No. 14623500
404 West 7th Street
Austin, TX 78701
(512) 478 – 1236
(512) 478 – 1473 (facsimile)
receptionist@muellerlaw.com